## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Modern Builders, Inc.,

        Plaintiff,

    v.

Alden-Conger Public School District #242,

        Defendant and
        Third-Party Plaintiff,

    v.

The Cincinnati Insurance Companies,

        Third-Party Defendant.

**MEMORANDUM OPINION
AND ORDER**
Case No. 04-1056 ADM/JSM

---

John F. Angell, Esq., Stich Angell Kreidler & Dodge, Minneapolis, MN, appeared for and on behalf of Modern Builders, Inc.

Mark R. Azman, Esq., Johnson & Condon, P.A., Minneapolis, MN, appeared for and on behalf of Alden-Conger Public School District #242.

Douglas R. Archibald, Esq., Terhaar Archibald Pfefferle & Griebel L.L.P., Minneapolis, MN, appeared for and on behalf of The Cincinnati Insurance Companies.

---

## I.  INTRODUCTION

On May 26, 2005, oral argument before the undersigned United States District Judge was heard on Modern Builders, Inc.'s ("Modern Builders"), Alden-Conger Public School District #242's ("District"), and The Cincinnati Insurance Companies' ("Cincinnati") Motions for

Summary Judgment [Docket Nos. 29, 26, 38, 19, respectively].[1]  To accommodate supplemental

briefing, the matter was not taken under advisement until June 8, 2005.[2]  In its Complaint,

Modern Builders seeks payment for work performed to repair the storm-damaged roof of Alden-

Conger Senior High School ("School").  The District counterclaimed, asserting Modern Builders

was responsible for the storm damage to the roof.  Finally, the District brought a third-party

claim against Cincinnati alleging the District was an additional insured on Cincinnati's insurance

policy and that Cincinnati is liable for the District's storm damage.  For the reasons set forth

below, Cincinnati's Motion for Summary Judgment is granted and Modern Builders and the

District's Motions for Summary Judgment are denied.

## II.  BACKGROUND[3]

On April 22, 2002, Modern Builders entered into a contract with the District to replace

portions of a roof on Alden-Conger Senior High School.  Contract (Azman Aff. [Docket No. 40]

Ex. 1).  The project involved removing some of the existing roofing materials and replacing

them with steel roofing.  Id. ¶ 11 at ISD 00001.  The Contract also set forth Modern Builders'

obligations concerning insurance and any property damage.  Id.

---

[1]  The District apparently filed two Motions for Summary Judgment [Docket Nos. 26, 38].  The two motions are essentially the same.

[2]  The District also made a Motion to Strike Plaintiff's Summary Judgment Reply Brief [Docket No. 60] on the grounds that it improperly raised new legal and factual issues.  At oral argument, the Court ruled it would not strike the reply brief; however, it agreed to provide the District with an opportunity to respond to the reply brief.

[3]  For purposes of the instant Motion, the facts are viewed in the light most favorable to the nonmovant.  See Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

At the time of the project, Modern Builders was insured under a builder's risk policy, which provided coverage for various new construction projects, and installation floater coverage, which covered Modern Builders' materials. Byl Aff. [Docket No. 22] ¶ 3. The policies were issued by Cincinnati. Id. The parties contest whether the District was named as an additional insured on either policy.

On July 10, 2002, after Modern Builders began work on the roof, a rainstorm swept through the area, causing water damage to the school. Stensland Dep. (Azman Aff. Ex. 3) at 39; Stensland Aff. (Sever Aff. [Docket No. 42] Ex. 4) ¶ 3. Water entered the school through a failed seam in the roof. At the crux of the analysis is the controversy over whether Modern Builders had already performed work directly at the site of the failure. Stensland Aff. ¶ 5. On July 11, 2002, immediately after the storm, representatives for the District and Modern Builders met to assess the damage. Id. ¶ 4. Modern Builders contends all parties agreed at this meeting that the damage was neither caused by Modern Builders nor its responsibility. Id. ¶ 5. Ultimately, it was agreed Modern Builders would repair the damage to the roof caused by the storm. Id. ¶ 6.

Modern Builders sent the District two invoices for work done to repair the storm damage. Invoice number 10097, totaling $52,360, was designated to cover "Material and labor to replace damaged insulation." Invoices (Sever Aff. Ex. 5). Invoice number 10040 covered "material and labor to remove new Garland roof" and totaled $41,705. Id.

On June 11, 2003, Modern Builders submitted a Property Loss Notice to Cincinnati in which it stated: "Ins. was doing work at school - rain storm damage." Loss Notice (Azman Aff. Ex. 5). On October 2 and December 15, 2003, Cincinnati denied Modern Builders' claim.

3

Denial Letters (Affman Aff. Ex. 6).  Modern Builders is not pursuing a claim against Cincinnati in the present action.

Modern Builders and the District now disagree as to who is responsible for the cost of repairing the storm damage.  The District refused to pay for the additional work described in the aforementioned invoices.  On February 26, 2004, Modern Builders filed a Complaint against the District for the cost of the roof repairs.  On April 8, 2004, the District paid Modern Builders $94,065.00 for the storm repair work.  Apr. 8, 2004 Letter from Steven Rizzi with attachments (Sever Aff. Ex. 5); Apr. 26, 2004 Letter from Michael Dee (Sever Aff. Ex. 6).  Modern Builders asserts the District still owes $10,111.00, plus interest for the remainder of the work.  Apr. 26, 2004 Letter from Michael Dee.

The District maintained property risk protection through a Self-Insured Property and Casualty Plan issued by the Minnesota School Boards Association Insurance Trust Group ("MSBAIT").  MSBAIT Policy (Azman Aff. Ex. 10).  On March 1, 2004, the District and MSBAIT entered into a Loan Receipt and Agreement under which MSBAIT paid the District $115,547.51 for storm-related losses.  Loan Receipt (Azman Aff. Ex. 4).

On October 26, 2004, Modern Builders' general liability insurer, Clarendon National Insurance Co. ("Clarendon"), entered into a Partial Settlement Agreement, pursuant to the holding of Meadowbrook, Inc v. Tower Ins. Co., Inc., 559 N.W.2d 411 (Minn. 1997).  Partial Settlement Agreement (Sever Aff. Ex. 8).  In return for $35,000, the Partial Settlement Agreement released Clarendon and Modern Builders from and against those portions of the School District's damages arguably subject to Modern Builders' Commercial General Liability

4

("CGL") policy.  Id. at 3-4; see also CGL Policy (Angell Aff. [Docket No. 58] Ex. 14).

## III.  DISCUSSION

### A.       Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

### B.       The District's Claims Against Cincinnati

The District argues it is entitled to recover benefits under the Cincinnati Policies because it is an additional insured.  In the alternative, the District contends Modern Builders is a first party insured and it should be able to recover benefits under "general contract principles."

#### 1.       Additional Insured

The District claims Modern Builders was contractually obligated to add the District to the Cincinnati policies as an additional insured.  Modern Builders admits it never requested the

District be named as an additional insured on the Cincinnati policies.  It is also undisputed the District is not named as an additional insured on the policies.  <u>See</u> Pl.'s Resps. to Def.'s Req. for Admiss., Resp. Nos. 4, 5, 6 (Archibald Aff. [Docket No. 21] Ex. B); Byl Aff. ¶¶ 4, 5.  Under Minnesota law, a party is not an additional insured on a policy unless the named insured requests the party be included as an additional insured and the insurer assents to the request.  <u>St. Paul Sch. Dist. No. 625 v. Columbia Transit Corp.</u>, 321 N.W.2d 41 (Minn. 1982).

In <u>Columbia Transit</u>, a school district and a bus contractor entered into an agreement for bus services.  Although the agreement required the bus company to name the school district as an additional insured on its insurance policy, the bus company neglected to do so.  <u>Id</u>. at 43-45.  The trial court found the school district should be considered an additional insured since the insurer would have included the school district on the policy, at no additional cost, if the bus contractor had so requested.  <u>Id</u>. at 44-45.  The Minnesota Supreme Court reversed, holding that "it is essential to the formation of a contract of insurance for there to be mutual assent of the parties."  <u>Id</u>. at 45.  Furthermore, the issuance of a certificate of insurance did not constitute assent by the insurer to the school district being named as an additional insured.  <u>Id</u>.

Similarly, in the instant case, there is no evidence in the Record to indicate Modern Builders ever requested, or Cincinnati ever assented to, the District being named as an additional insured.  The District attempts to create a material issue of fact through the deposition testimony of Richard Stensland ("Stensland"), the President of Modern Builders.  Stensland testified he cannot remember whether he, or his secretary, Tami Mauer, ever placed a call requesting the District be named as an additional insured.  Stensland Dep. (Azman Aff. II [Docket No. 52] Ex.

6

14) at 88-89.  The District argues, since Stensland cannot remember whether such a call was placed, it may have occurred.  The fact remains the District can offer no evidence that anyone at Modern Builders ever told Cincinnati to add the District as an additional insured.  In the face of Modern Builders' denial of making the request, a denial corroborated by the insurance agent, the alleged ambiguity in Stensland's deposition testimony is insufficient to create a material issue of fact.  See Pl.'s Resps. to Def.'s Req. for Admiss., Resp. Nos. 4, 5, 6; Byl Aff. ¶¶ 4, 5.

Although it is beyond dispute that the District was not named as an additional insured on the policy, the District argues Cincinnati is bound to treat the District as an additional insured because its agent issued a certificate of insurance indicating the District was an additional insured.  In certain instances, an insurer can be bound by the conduct of its agent.  See Columbia Transit, 321 N.W.2d at 45; Julien v. Spring Lake Park Agency, Inc., 166 N.W.2d 355 (Minn. 1969).  The District also cites case law from other jurisdictions holding that an insurer may be bound by a certificate of insurance listing a party as an additional insured.  See Weitz Co. LLC v. Travelers Cas. & Sur. Co. of America, 266 F. Supp. 2d 984, 997-98 (S.D. Iowa 2003); Bucon, Inc. v. Pennsylvania Mfg. Assoc. Ins. Co., 151 A.D.2d 207, 210 (N.Y. App. Div. 3d Dep't 1989).

The District's argument fails for several reasons.  First, in both Columbia Transit and Julien, the courts held there must be mutual assent between an insured and its insurer to bind insurance coverage.  The Columbia Transit holding turns on precisely this point.  321 N.W.2d at 45.  In Julien, the court found mutual assent between the parties where the agent testified it was his "conscious intention to accept coverage" requested by the insured, despite his subsequent failure to complete the policy.  166 N.W.2d at 357 Here, as previously discussed, no such mutual

7

assent occurred because Modern Builders never asked Cincinnati to name the District as an additional insured.

Furthermore, there is no evidence a certificate of insurance was issued naming the District as an additional insured on Cincinnati's builder's risk policy or installation floater coverage.  It is undisputed the District was issued a certificate of <u>liability</u> insurance as evidence Modern Builders possessed insurance for general liability, automobile liability, garage liability, excess liability, workers compensation and employers' liability and liability for construction equipment leased or rented.  District Certificate of Liability Ins. (Azman Aff. Ex. 11); Cincinnati Certificate of Liability Ins. (Azman Aff. Ex. 12).  Significantly, builder's risk insurance and installation floater coverage are not listed on the certificate of liability.

The parties dispute the version of the certificate issued to the District.  Cincinnati's version lists the District as the "Certificate Holder," however, the words "additional insured" do not appear on the certificate.  Cincinnati Certificate of Liability Ins..  The District's version includes the language "Additional Insured; Insurer Letter: __" in a box to the right of "Certificate Holder."  District Certificate of Liability Ins.  Notably, the line next to "Additional Insured; Insurer Letter" is unchecked.  <u>Id</u>.  The District argues the terms are used in the disjunctive and therefore, a check would only be necessary for the "Insurer Letter" portion, and not to indicate the District was an Additional Insured.  In the alternative, the District argues the language is ambiguous and should be construed against the drafter.  <u>See</u> <u>Vaubel Farms, Inc.v.</u> <u>Shelby Farms Mut.</u>, 679 N.W.2d 407, 411 (Minn. Ct. App. 2004) ("Any ambiguity should be construed against the drafter of the agreement").

8

The Court finds no such ambiguity exists and the Certificate should be enforced as written.  Garrick v. Northland Ins. Co., 469 N.W.2d 709, 711 ("As a general rule, 'an insurance policy is a contract and the rights of the contracting parties are determined by the terms of the policy'").  In the absence of a check mark, there is no indication that the District is an additional insured under the policy.[4]  Therefore, the agent's conduct was consistent with Cincinnati's assertion and cannot bind Cincinnati to an insurance contract where the District is an additional insured.

### 2.     "General Contract Principles"

The District next argues it is entitled to recover insurance benefits from Cincinnati under general contract principles.  The District contends U.S. Fire Ins. Co. v. Ammala permits an insurer to pursue a claim against a contractor and its insurer pursuant to "general contract principles" that governed which policy provided primary coverage.  334 N.W.2d 631, 634-35 (Minn. 1983).   The District claims MSBAIT, through the District, should be able to assert a claim against Modern Builders and Cincinnati based on an "other protection" provision in the MSBAIT trust plan.

---

[4]  The ACORD certificate of liability issued to the District also includes the language:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND
> CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER.  THIS CERTIFICATE
> DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE
> POLICIES BELOW.

District Certificate of Insurance.  An ACORD certificate of insurance containing such language which erroneously represents a party as an additional insured has been found not to be binding unless the policy is actually amended.  See American Motorist Ins. Co. v. Superior Acoustics, Inc., 277 A.D.2d 97, 98 (N.Y. Sup. Ct. 2000); TIG Ins. Co. v. Sedgwick James of Wash., 184 F. Supp. 2d 591, 597-98 (S.D. Tex. 2001).

Ammala's holding is inapplicable to the instant case. Ammala involved a contractor who was insured under multiple policies and used "general contract principles" to determine which insurance policy is primary when two policies cover the same insured. Id. at 634. The Ammala decision does not create a cause of action. The instant case is not a dispute between two insurers who are insuring the same interest or risk. See Reliance Ins. Co. v. Liberty Mut. Fire Ins. Co., 13 F.3d 982, 984 (6th Cir. 1994) (finding no authority "for the proposition that an insurance contract which insures only a property owner's interest insures the 'same interest' as a policy which only insures a contractor's interest"); see also Commercial Union Ins. Co. v. Bituminous Cas. Corp., 1989 U.S. Dist. LEXIS 579, at *1 (D.N.J. Jan. 19, 1989) (permitting plaintiff to recover on its indemnification claims where the "parties concur that the policies in this case cover the same property and the same interest"). To allow the District to assert this claim effectively vitiates the Minnesota Supreme Court's holding in Columbia Transit that "mutual assent of the parties" is "essential to the formation of a contract of insurance." 321 N.W.2d at 45. Furthermore, there is authority from other jurisdictions that an owner has no right to pursue recovery from a contractor's builder's risk insurer when the owner was not named as an additional insured on the builder's risk policy. See Ohio Cas. Ins. Co. v. State Farm Fire and Cas. Co., 546 S.E.2d 421, 422-23 (Va. 2001); Reliance Ins. Co., 13 F.3d at 985.

For the aforementioned reasons, the District cannot proceed against Cincinnati. As a result, Cincinnati's Motion for Summary Judgment is granted.[5]

_____

[5] Additionally, the Builder's Risk Policy in question does not cover losses to "existing buildings or structures to which additions, alterations, improvements or repairs are being made." Builders' Risk Inland Marine Coverage Form at A.1.a (Azman Aff. Ex. 9). Similarly, the Installation Floater Coverage only covers losses to the insured's "materials, including labor, and supplies to be used in or incidental to construction, erection, or installation of the property described in the

**C.**      **The Cross Claims of the District and Modern Builders**

Modern Builders asserts the District owes $10,111.00, plus interest for unpaid roof repair

work.  Apr. 26, 2004 Letter from Michael Dee.  The District counterclaimed that Modern

Builders' negligent work caused $116,547.51 of water damage.  Counterclaim Damages (Gabert

Aff. [Docket No. 72] Ex. F).  Since the counterclaim was filed, the District claims it has suffered

further water damage.  The District's counterclaims include: (1) breach of contract; (2) breach of

express and implied warranties; (3) breach of implied covenant of good faith and fair dealing; (4)

negligence; (5) misrepresentation; (6) breach of fiduciary duty; and (7) consumer fraud.

**1.**      **Partial Settlement Agreement**

Modern Builders argues the District's counterclaims were resolved by the Partial

Settlement Agreement entered into by the District and Clarendon, pursuant to its CGL Policy.

As evidence of the intent of the parties, Modern Builders cites the fact the District submitted the

same itemized list of water damages as the basis for the settlement as the District submitted in

the instant action.  See "Alden-Conger School Water Damage, Summer 2002," Ex. A to Partial

Settlement Agreement; Counterclaim Damages.  In return for $35,000, the District agreed to

release Cincinnati and Modern Builders from:

> all claims, damages, losses and expenses which the Distrct claims to have sustained as a
> result of the allegedly wrongful conduct of Modern Builders, Inc. which caused or
> otherwise resulted in the Counterclaim Damages described in Exhibit A . . . and which
> are arguably covered under the Clarendon policy.

Partial Settlement Agreement at 3.  However, the Agreement also states:

---

Declarations."  Installation Floater Special Coverage Form at A.1 (Azman Aff. Ex. 9).
Consequently, the Builder's Risk Policy and Installation Floater Coverage would only cover
losses to the work itself rather than the existing school property.

> Releasors specifically reserve their rights to proceed with any and all other claims and/or causes of action against Modern Builders, Inc. other than those compromised and settled by this Partial Settlement Agreement.  This Partial Settlement Agreement is not intended to release any other claims or causes of action against Modern Builders, Inc., including but not limited to any of the District's claims against Releasees for those portions of the Counterclaim Damages which are not arguably covered by the Clarendon policy or any of the District's rights, actions or causes of action it may have against Modern Builders, Inc. for property damage, if any, which relates to work performed or products provided subsequent to the date the Counterclaim Damages were incurred by the District.

Id. at 3-4.  Based on this language, Modern Builders admits the Partial Settlement Agreement permits the District to bring additional claims not arguably covered by the Clarendon policy but argues no such claims have been raised.

The Partial Settlement Agreement only precludes claims that are "arguably covered" by the CGL Policy.  "Arguably covered" is a broad and ambiguous phrase susceptible to several interpretations.  The Policy agrees to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  CGL Policy § I, subp. 1.a.  The insurance applies to "property damage" if it is caused by an "occurrence" that takes place in the "coverage territory" and occurs during the policy period.  Id. at § I, subp. 1.b.  The policy also contains numerous exclusions to which the insurance does not apply, including exclusions for damage to property, damage to impaired property or property not physically injured and contractual liability.  See Id. at § I, subp. 2., § V, subps. 8.  Furthermore, there is an issue as to whether damage stemming from negligence constitutes an occurrence.  Id. § V, subps. 8.  Depending on what role, if any, Modern Builders' work had in causing the seam to fail, a colorable argument exists that the Partial Settlement Agreement "arguably covers" the District's claims against Modern Builders.  As a result, a

12

material issue of fact exists and summary judgment on this issue is inappropriate.[6]

### 2.    Modern Builders' Contractual Obligations

The District argues Modern Builders was contractually obligated to obtain builder's risk insurance and name the District as an additional insured.  The District also claims the terms of the contract make Modern Builders strictly liable for repairing any water damage that occurred at the school during the project, regardless of whether it resulted from Modern Builders' work. Each issue will be addressed in turn.

### i.    Insurance

Several provisions of the Contract require Modern Builders to obtain builder's risk insurance and name the District as an additional insured.  Paragraph 8 of the Contract provides:

> The Contractor will be required to provide a Certificate of Insurance to the Alden-Conger Community School District which shall include all divisions of coverage, and be on a comprehensive basis.  This Certificate of Insurance shall include Alden-Conger Community School District in name on the insurance policy as an additional insured. The insurance required for this Contractor is set forth in Exhibit "C" attached hereto and by this reference made a part of this Contract.

Contract, ¶ 8 at ISD 00001.  Exhibit "C" to the Contract requires Modern Builders to procure property insurance for the project:

> (b)    Property insurance shall be on an "all risk" or equivalent policy form and shall include, without limitation, insurance against the perils of fire (with extended coverage) and physical loss or damage including, without duplication of coverage, theft, vandalism, malicious mischief, collapse, earthquake, flood, windstorm, false work, testing and start

---

[6]  The District is prohibited, however, from "double recovery" for damages sustained as a result of the water infiltration.  See Vaughn v. Northwest Airlines, Inc., 558 N.W.2d 736, 745 (Minn. 1997) (finding a double recovery of damages is not allowed for a single act of conduct, even if the conduct gives rise to multiple claims).  As previously discussed, the list of itemized damages submitted by the District in support of its counterclaim is identical to Appendix A attached to the Partial Settlement Agreement.  By virtue of the Partial Settlement Agreement, the District has already received $35,000 in compensation for those damages.

up, temporary buildings and debris removal including demolition occasioned by enforcement of any applicable legal requirements, and shall cover reasonable compensation for architect's and contractor's services and expenses required as a result of such insured loss.

Id., Ex. C(b) at ISD 00057.  Section (c)(E) of Exhibit C also states:

The Contractor, by executing statement of insurance compliance, acknowledges to the owner that he has totally complied with his coverage requirements of contract documents.  Contractor further acknowledges that the owner has no responsibility to provide coverage of any nature.

Id., § 22(c)(E) 00058. Conversely, the District was not required to maintain insurance.  Id., ¶ 22.4. at ISD 00015.

Modern Builders admits it did not ask Cincinnati to add the District as an additional insured on its builder's risk policy.  Although this is a breach of the contract, the District is only entitled to damages to the extent Modern Builders breached its contractual obligations to perform work on the roof and to prevent water infiltration.  The failure to add the District as an additional insured merely affects which party is responsible for paying the District for any damage allegedly caused by Modern Builders.  The breach itself does not entitled the District to damages.  See Crowley Am. Transp., Inc. v. Richard Sewing Mach. Co., 172 F.3d 781, 784-85 (11th Cir. 1999).

### ii.   Water Damage

The District next asserts the terms of the Contract require Modern Builders to repair any water damage that occurred to the school during the Project regardless of whether the damage was caused by Modern Builders' work.  In support of this proposition, the District relies on several terms of the Contract.

14

The Contract is structured so that the first two pages provide a broad overview of the conditions and scope of the agreement.  Contract at ISD 00001-02.  The next several pages, entitled "Specifications," set forth each parties obligations in more detail.  Id. at ISD 00003-15. Additional sections follow the Specifications, including sections entitled "Roof Deck and Insulation" and "Insurance and Bond," which concerns insurance obligations.  Id. at ISD 00034-39, 00057-58.

Paragraph 11 of the Contract's overview states, in relevant part:

The condition of the buildings and ground areas shall be recorded, and the Contractor shall be responsible for the correction and/or repair of any additional damage to the facilities resulting from the related project.

Id., ¶ 11 at ISD 00002.

The Specifications section includes several articles divided by topic.  Each article is then followed by subsections further delineating Modern Builders' obligations in that particular area.

Article 11 of the Specifications section, entitled "Protection of Work and Property," states:

The Contractor shall maintain adequate protection for all of his work to prevent damage, and shall protect the Owner's property and any adjacent property from injury or loss arising from this Contract.

It is followed by these relevant subsections:

11.2   The Contractor shall save the Owner harmless from any loss arising due to injury or accident to the public, or his workers, or from theft of materials stored at the job site.

11.6  Any areas of the building or grounds which have become stained or damaged in any way shall be repaired or replaced prior to the final inspection.  The method of repair used must be acceptable to both the Owner and the Owner's Representative.

Id. Art. 11 at ISD 00009.

Article 13 of the Specifications concerns "Material Storage and Cleanup."  Subsection

15

13.1 states:

> All damages caused by water infiltration resulting from the failure of the Contractor to secure each day's work in a watertight manner, or as a result of any procedure or practice, will be corrected at the Contractor's expense.  Included as damages will be all labor costs incurred by the Owner as a result of such water infiltration.

Id. Art. 13.1 at ISD 00010.  Article 14 of the Specifications is entitled "Work In Progress Changes" and subsection 14.1 requires:

> The Contractor remains responsible, as in all other areas of this Specification, to maintain a completely watertight condition of any roof area which is so designated in these Documents.

Id. Art. 14.1 at ISD 00010.  In addition, Part 3.1(A) of the "Roof Deck and Insulation" section, requires:

> Contractor shall notify the owner or the owner's representative upon discovery of any wet insulation.  Wet insulation shall be removed as needed and replaced with like kind and height on a unit cost basis as submitted on the Bid Proposal Form.

Id. Part 3.1(A) at ISD 00038.  Finally, section (c)(D) of the Insurance and Bond section, attached as of Exhibit C of the Contract, states:

> Furthermore, any water infiltration damage during the contraction process shall be the contractors responsibility and include materials and labor to restore to the owner's satisfaction.

Id. § 22(c)(D) at ISD 00057.

The District argues the language of subdivision 11.6 that Modern Builders will replace "any areas" that are damaged "in any way" establishes that Modern Builders is strictly liable for any water damage that occurred during the project.  The District also notes the language in the Insurance and Bond section that Modern Builders is responsible for restoring "any water infiltration damage during the construction process."

16

Under Minnesota law, the meaning and effect of an unambiguous contract is a matter of law for the court.  Porous Media Corp. v. Midland Brake, Inc., 220 F.3d 954, 959 (8th Cir. 2000); Green Tree Acceptance, Inc. v. Wheller, 832 F.2d 116, 117 (th Cir. 1987) (applying Minesota law); In re Turners Crossroad Dev. Co., 277 N.W.2d 364, 369 (Minn. 1979).  In interpreting a contract, the language is to be given its plain and ordinary meaning.  Brookfield Trade Center, Inc. v. County of Ramsey, 584 N.W.2d 390, 394 (Minn. 1998).  A court must read contract terms in the context of the entire contract, interpreting the contract in a way that gives meaning to all its provisions.  Id.

The language in Paragraph 11 of the contractual overview states that Modern Builders is only responsible for "damage to the facilities resulting from the related project."  Consistent with that overarching provision is Article 11 of the Specifications, which sets out Modern Builders' obligations for "Protection of Work and Property."  The section is headed by a sentence stating that Modern Builders must maintain adequate protection for "all of [its] work" and "shall protect the Owner's property . . . from injury or loss arising from this Contract."  The provision relied on by the District, subsection 11.6, appears as a subsection to this sentence.  Therefore, subsection 11.6 appears to further explain, rather than expand, Modern Builders' obligations under Article 11.  Both paragraph 11 of the overview and Article 11 demonstrate Modern Builders is only responsible for damage resulting from the project itself.

The other provisions cited by the District are located in sections that focus on other facets of the project and do not alter the above analysis.  Subsections 13.1 and 14.1 of the Specifications must be interpreted in the context of their respective sections, entitled "Material

17

Storage and Cleanup" and "Work in Progress Changes."  They both address water damage

resulting from a failure of Modern Builders to waterproof its work rather than water damage

from an unrelated source.  The same analysis applies to the provision Part 3.1(A) of the "Roof

Deck and Insulation" section.  Finally, the language in the Insurance and Bond section must be

interpreted in light of the language in Paragraph 11 of the contractual overview and Article 11 of

the Specifications.  In interpreting the Contract as a whole, it is clear Modern Builders is only

responsible for damages that occurred as a result of its project for the District.  Consequently, the

District can only recover on its counterclaims if the water damage arose from Modern Builders'

work.

**3.    Responsibility for Water Damage**

Ultimately, resolution of Modern Builders' claim and the District's counterclaims turn on

whether Modern Builders "work" was responsible for permitting the water infiltration.  Not

surprisingly, the parties disagree as to Modern Builders' culpability.

Modern Builders claims the water infiltrated into a failed seam on the existing roof in an

area where Modern Builders had not commenced work.  Representatives from both Modern

Builders and the District met on July 11, 2002 to survey the storm damage.  Stensland asserts

that all parties present at that meeting "agreed the damage caused by the storm originated on

portions of the school on which Modern Builders, Inc. had not yet performed any work and that

the damage was not caused by nor the responsibility of Modern Builders, Inc."  Stensland Aff.

¶ 5.  He also testified at deposition that the tie-offs and temporary ballast used to secure the area

of the roof on which Modern Builders was working were "absolutely perfect."  Stensland Dep.

(Sever Aff. Ex. 3) at 41-43.  He claims a seam in the existing roof was ripped by the high volume of rain from the storm.  Stensland Aff. ¶ 5.  The water infiltrated this seam of the existing roof and spread under the old roof to other areas, including those where Modern Builders was performing work.  Id.  To access and replace the old, wet insulation, Modern Builders found it necessary to raise a portion of the new roof.  Stensland Dep. at 47-48.  Modern Builders argues the new roof was not deficient or defective, but was simply lifted to access the old insulation.  Id.

Conversely, the District argues Stensland's deposition testimony supports its claim that Modern Builders had performed some work on the area of the roof where the seam failed.  The old roof was comprised of a rubber membrane covered by rock.  Stensland Dep. at 79.  The edges of the rubber pieces overlapped by six inches and were glued together to form a seam.  Id. Stensland stated Modern Builders had removed the rock in preparation for working on the area in question prior to the storm.  Id. at 79-80.  He testified the area of the roof may have been "corn-rowed," a process in which the removed rock is placed in rows on the roof to act as ballast, or have already been cleared of corn-rows at the time of the storm.  Id. at 80-81.  Regardless, Stensland claimed appropriate amounts of insulation and metal ballast or metal hat sections were being used as ballast in the area.  Id. at 81.

The District's roofing expert believes the interim ballast materials were insufficient to prevent the membrane from "undulating" and "kicking" the ballast from the membrane's surface.  Addendum to Thone Expert Report (Azman Aff. Ex. 7).  This undulation allegedly caused the seams to separate.  Id.

19

There is also debate about whether the portion of the new roof Modern Builders lifted to access the wet insulation permitted the water infiltration or was damaged by the rain.  The cost for removing this roof, $41,705, was specified in invoice number 10040, which stated: "Material and labor to remove new Garland roof (new roofing already completed) . . . ."  Invoices. Stensland's deposition testimony indicates the roof was not defective or damaged by water infiltration, but was raised in order to gain access to insulation damaged by water that had spread from the failed seam.  Stensland Dep. at 47-48.  The District argues the roof was defective or damaged by water based on Stensland's statements that "we stood there and water was coming into the building under the section that we had completed.  We knew water was under the roof that had been completed, so we knew [the roof] had to come up."  Stensland Dep. at 55.

The evidence presented raises genuine issues as to whether the torn seam that led to the water damage resulted from Modern Builders' work and whether the portion of the new roof that was lifted was defective.  As a result, both Modern Builders and the District's respective motions for summary judgment are denied.

## IV.  CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Modern Builders' Motion for Summary Judgment [Docket No. 29] is **DENIED**, and

2.  The District's Motions for Summary Judgment [Docket Nos. 26, 38] are **DENIED**; and

3.  Cincinnati's Motion for Summary Judgment [Docket No. 19] is **GRANTED**; and

4.  The District's Counterclaims against Cincinnati are **DISMISSED WITH PREJUDICE**.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  August 30, 2005.